# In the United States Court of Federal Claims

**No. 19-1831C**
**Filed: June 23, 2020**

```
* * * * * * * * * * * * * * * * * *
                                    *
PROBIR K. BONDYOPADHYAY,            *
                                    *
              Plaintiff,            *
                                    *
v.                                  *
                                    *
UNITED STATES,                      *
                                    *
              Defendant.            *
                                    *
                                    *
* * * * * * * * * * * * * * * * * *
```

**Pro Se; Patent Infringement; Res Judicata; Fifth Amendment Taking; Fraud; Statute of Limitations.**

**Probir K. Bondyopadhyay**, pro se, Houston, TX.

**Joshua I. Miller**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were **Gary L. Hausken**, Director, Commercial Litigation Branch, and **Joseph H. Hunt**, Assistant Attorney General, Civil Division.

## O P I N I O N

**HORN, J.**

## FINDINGS OF FACT

Plaintiff's complaint, filed on November 27, 2019, states that "[t]he Plaintiff, a U.S. Citizen is the sole inventor and owner of the live U.S. Patent 6,292,134 entitled *Geodesic Sphere Phased Array Antenna System*." (capitalization and emphasis in original) (internal references omitted). Attached to plaintiff's complaint is only the first page of the '134 patent, which is dated September 18, 2001. The '134 patent lists plaintiff as the inventor. The abstract of the '134 patent attached to the complaint states:

> A geodesic sphere phased array antenna system, capable of scanning the entire omni-directional communication space and comprising substantially equilateral triangular planar subarrays of antenna elements arranged in a geodesic sphere configuration. Icosahedron, one of the five regular solids and truncated icosahedron, one of the fifteen semi-regular solids are the preferred basis of the geodesic sphere phased array construction. The entire communication space is considered as subdivided into a large number of smaller cells and corresponding to each such cellular

communication space, a contiguous set of the subarrays is energized and electronically phased to scan the cellular space. Another contiguous set of subarrays is energized and electronically phased to scan another cellular space in a similar manner resulting in limited angle scanning requirements which permit the basic antenna elements to be connected in a cluster as a unit building block to which transmit/receive signal distribution and processing means are connected resulting in lower costs in deployment, operation and maintenance.

Below the abstract, the following image is provided:



The first page of the '134 patent also states that the '134 patent contains "**30 Claims, 14 Drawing Sheets**." (capitalization and emphasis in original).

Plaintiff's complaint, although at times difficult to follow, seems to allege that the defendant infringed on his ownership of the '134 patent. Plaintiff's complaint states that "[t]he violation of the Constitutional Order has occurred at the Small Business Innovation Research (SBIR) Program of the U.S. Air Force administered by the Air Force Research Laboratory (AFRL) under the central control of the Office of the Secretary of Defense (OSD)." (capitalization and emphasis in original) (internal references omitted). Plaintiff further alleges in his opposition to defendant's motion to dismiss that there have been "two distinctly separate violations: (i) acquisition of Innovation fraud under Title 15 USC section 638(a) and 638 (b). [sic] and (ii) violation of *Exclusive Right for Limited Times* of an Inventor, Owner, U.S. Citizen, (This Plaintiff)." (capitalization and emphasis in original). With regard to plaintiff's alleged second violation, plaintiff states that the "*Exclusive Rights for Limited Times* is a U.S. Constitutional Order that can NOT be dismissed by any Article 3 U.S. Courts or Article 1 U.S. Courts, created under Section 8, Clause 9." (capitalization and emphasis in original).

Plaintiff's complaint further states:

The U.S. Air Force has acquired the innovation (that soon became the U.S. Patent), in 1999 in clear **violation of Title 15 USC Section 638a and 638b**

to modernize the Air Force Satellite Control Network (AFSCN). The proof, at the origin of this U.S. Air Force effort, is staring at the Honorable Federal Court in Exhibit-3.

(capitalization and emphasis in original). Exhibit 3 of plaintiff's complaint is labeled: "**TIME LINE OF DEVELOPMENT WORKS ON THE** MODERNIZATION OF AIR FORCE SATTELITE CONTROL NETWORK (AFSCN) BY THE AIR FORCE RESEARCH LABORATORY (AFRL)" (capitalization and emphasis in original), and contains an uncited image depicting the United States Air Force's projected acquisition timeline for the construction of a Full Scale Geodesic Dome Phased Array Antenna, starting in 1999 and completed by 2021.

Plaintiff's multiple filings with the court in the above-captioned case do not specify a particular device of the AFRL which he alleges infringed on the '134 patent. The above-captioned case, Case No. 19-1831C, however, is one of many actions commenced by plaintiff relating to the alleged infringement on the '134 patent, including an administrative claim filed by plaintiff with the Judge Advocate General of the United States Air Force on June 17, 2002, which was denied 44 days later, on July 30, 2002. Between 2003 and 2013, plaintiff filed at least six lawsuits relating to the '134 patent in the United States District Court for the Southern District of Texas against contractors of the AFRL, as well as against the United States.[1]

---

[1] In defendant's motion to dismiss, the defendant notified the court of six lawsuits filed by plaintiff between 2002 and 2013 which relate to the '134 patent. Defendant states:

Plaintiff filed two lawsuits against the Government's contractors, alleging infringement of the '134 patent by those contractors:

- Bondyopadhyay v. Custom Mfg. & Eng'g, Inc, Civ. No. 4:03-cv-1542 (S.D. Tex. Filed May 7, 2003) (dismissed July 30, 2003 for lack of personal jurisdiction;
- Bondyopadhyay v. Alpha Omega Elec. LLC, Civ. No. 4:03-cv-1578 (S.D. Tex. Filed May 9, 2003) (dismissed July 30, 2003 for lack of personal jurisdiction).

Plaintiff then filed four lawsuits against the Government in district court over the next decade:

- Bondyopadhyay v. U.S. Secretary of Defense et al., Civ. No. 4:03-cv-3107 (S.D. Tex. Filed Aug. 6, 2003) (dismissed Dec. 5, 2003 for lack of subject matter jurisdiction and failure to exhaust administrative remedies);
- Bondyopadhyay v. U.S. Dept. of Defense et al., Civ. No. 4:04-cv-1990 (S.D. Tex. Filed May 18, 2004) (dismissed Aug. 6, 2004 for lack of subject matter jurisdiction);
- Bondyopadhyay v. Commander, U.S. Air Force Research

In 2014, plaintiff filed a previous lawsuit against the United States in the United States Court of Federal Claims, which was assigned to Judge Williams. During the course of the proceedings before Judge Williams, she issued three Opinions: a 2015 Opinion granting the United States' partial motion to dismiss, see Bondyopadhyay v. United States, No. 14-147, 2015 WL 1311726 (Fed. Cl. 2015) (Bondyopadhyay I); a Claim Construction Opinion in 2017, see Bondyopadhyay v. United States, 129 Fed. Cl. 793, 807 (Fed. Cl. 2017) (Bondyopadhyay II); and finally, a grant of defendant's motion for summary judgment in 2018, see Bondyopadhyay v. United States, 136 Fed. Cl. 114 (Bondyopadhyay III), aff'd, 748 F. App'x 301 (Fed. Cir. 2018). Also in 2018, Judge Williams' summary judgment decision in favor of defendant in Bondyopadhyay III was affirmed by the United States Court of Appeals for the Federal Circuit. See Bondyopadhyay v. United States, 748 F. App'x 301 (Fed. Cir. 2018) (Bondyopadhyay IV). In Judge Williams' decision granting defendant's partial motion to dismiss in Bondyopadhyay I, Judge Williams determined that some of plaintiff's claims were time-barred, and others "arose after expiration of the patent-in-suit." See Bondyopadhyay I, 2015 WL 1311726, at *1. Judge Williams' decision in Bondyopadhyay I also dismissed plaintiff's "claims for a Fifth Amendment taking, punitive damages, and costs arising out of other litigation." Id. In Judge Williams' Claim Construction Opinion in Bondyopadhyay II, Judge Williams' determined, after a claims construction hearing, that the '134 patent's use of the term "sphere" meant "greater than a hemisphere so as to provide the phased array antenna hemispherical or wider coverage." See Bondyopadhyay II, 129 Fed. Cl. at 807.

In granting summary judgment in favor of the United States in Bondyopadhyay III, Judge Williams found that there was no infringement of the '134 patent by the United States Air Force's device, referred to as the Ball Advanced Technology Demonstration antenna (Ball ATD). See Bondyopadhyay III, 136 Fed. Cl. at 124. Judge Williams described the Ball ATD as follows:

> There is only one accused device at issue—the Ball Advanced Technology Demonstration antenna. Since at least 2000, the Air Force Research Laboratory was interested in the feasibility of a large antenna system called the Geodesic Dome Phased Array Antenna. As part of this research, the Air

---

> Laboratory (AFRL) et al., Civ. No. 4:12-cv-1658 (S.D. Tex. filed June 1, 2012); and

- Bondyopadhyay v. U.S. Secretary of Defense et al., Civ. No. 4:12-cv-1914 (S.D. Tex. Filed July 1, 2013) (dismissed Oct. 23, 2013 for lack of subject matter jurisdiction).

The court also notes that a Westlaw docket search for plaintiff, at https://1.next.westlaw.com/Search/Results.html?query=adv%3A%20%22Probir%20K.%20Bondyopadhyay%22&contentType=DOCKET&querySubmissionGuid=i0ad74013000001729929984d66570adb&categoryPageUrl=Home%2FDockets&searchId=i0ad740130000017299299844d66570adb&transitionType=ListViewType&contextData=(sc.Search) (last visited June 23, 2020), reveals 15 cases filed by plaintiff in state and federal courts.

Force sponsored a number of small businesses to research and develop technology required for building a full-scale Geodesic Dome Phased Array Antenna. Subsequently, in November 2006, the Air Force awarded a contract to Ball Aerospace & Technologies Corporation to develop a Geodesic Dome Phased Array Antenna advanced technology demonstration. Accordingly, Ball was "to develop, build, and demonstrate the technological maturity, manufacturing readiness, and mission effectiveness of a scalable sector" of a Geodesic Dome Phased Array Antenna. The Ball Advanced Technology Demonstration antenna was the result of this research and development.

The Ball Advanced Technology Demonstration antenna was designed in 2006–07, manufactured in 2007–08, and installed at Schriever Air Force Base in Colorado in 2008–09, for testing and demonstration. The actual demonstration of the Ball Advanced Technology Demonstration antenna took place between February 2009 and May 2009.

The Ball Advanced Technology Demonstration antenna, which stood roughly one to two stories high, was not completely constructed to constitute a full sphere, and was only made up of six flat panels: a single central pentagonal-shaped panel, surrounded by five outer hexagonal-shaped panels. . . .

After the demonstration in 2009, the Ball Advanced Technology Demonstration antenna was disassembled, with one part sent back to Ball Aerospace for further testing, and after 2012, the Air Force Research Laboratory did not engage in any activities to develop, manufacture, or test a Geodesic Dome Phased Array Antenna.

Bondyopadhyay III, 136 Fed. Cl. at 118–20 (internal references omitted). Finding that the Ball ATD did not infringe upon the '134 patent under a literal interpretation, or under the doctrine of equivalents, Judge Williams stated:

In sum, because the Ball Advanced Technology Demonstration antenna was incapable of providing hemispheric or greater coverage, it did not literally infringe the '134 patent. Under either test for infringement under the doctrine of equivalents, the accused device cannot be found as infringing. Accordingly, Defendant's motion for summary judgment is **GRANTED**, and Plaintiff's 'Motion of the Infringement Phase' is **DENIED**.

Id. at 124 (capitalization and emphasis in original) (internal citation omitted).

As discussed above, plaintiff in the above-captioned case does not reference a specific device which allegedly infringed on the '134 patent, although plaintiff's filings in the above-captioned case mention the previous proceedings in this court. Plaintiff's complaint states:

> The *constitutional* financial claim has already been recorded with the U.S.
> Court of Appeals for the Federal Circuit [**Exhibit-6**]. It is $100 per hour for
> 1500 hours per year for 11 years and 23 days, plus administrative and office
> cost of $1000 per month for 60 months. The total amount of ***Constitutional
> Financial Claim*** is $1,719,000.

(alteration, capitalization and emphasis in original). Attached as Exhibit 6 of plaintiff's
complaint in the above-captioned case is a portion of plaintiff's briefing before the United
States Court of Appeals for the Federal Circuit in <u>Bondyopadhyay IV</u>.[2] Additionally, in
plaintiff's opposition to defendant's motion to dismiss, plaintiff references the company
which constructed the Ball ATD, stating that "[t]he U.S. Air force [sic] Research Laboratory
(AFRL) and the contractor Ball Aerospace Corporation have done sub-standard work.
This has already been pointed out during earlier Court proceedings (case 1:14-cv-00147-
MCW)."[3]

---

[2] An excerpt from the appeal file in the United States Court of Appeals for the Federal
Circuit from <u>Bondyopadhyay IV</u>, which is attached at Exhibit 6 of plaintiff's complaint in
the above-captioned case, states:

### 9.0 THE PLAINTIFF INDEPENDENT INVENTOR'S FINANCIAL CLAIM

9.1    PART-A    based on *exclusive rights for limited times* (period
September 18, 2001 through October 11, 2012). The Plaintiff Appellant
independent Inventor *was deprived of* full time highly specialized Phased
Array Antenna Engineering work on his own invention.

9.2    This PART-A amount is $100 per hour for 1500 hours per year for
eleven (11) years and 23 days.

9.3    PART-B    Plaintiff Appellant's Court cost (US Court of Federal
Claims, period February 2014 through April 2018). This includes clerical,
postal, copying and office costs at their minimum.

9.4    This PART-B amount is $1000 per month for 50 months.

10.    This Claim originated from a procurement fraud in the Small
Business Innovation Research (SBIR) program of the U.S. Air Force
managed by U.S. Air Force Research Laboratory (AFRL). Therefore, this
Constitutional Claim should be levied against the budget of the U.S. AFRL.

(capitalization and emphasis in original).

[3] The court cannot find any such statement by Judge Williams or by the United States
Court of Appeals for the Federal Circuit which recognizes that the AFRL or Ball Aerospace
Corporation have "done sub-standard work."

6

Plaintiff's complaint in the above-captioned case, once again, appears to allege a Fifth Amendment taking claim, stating that the "*Defendant has taken the livelihood of this Independent Inventor* for a prolonged period of eleven years and 23 days and continues to remain indifferent towards this *Constitutional Order* for a long time." (capitalization and emphasis in original). Plaintiff's filings with the court in the above-captioned case, however, do not indicate the exact nature of an alleged event that occurred eleven years and 23 days prior to plaintiff's filing of the above-captioned case.

Furthermore, plaintiff appears to allege fraudulent conduct by defendant. Exhibit 5 to plaintiff's complaint is labeled: "U.S. AIR FORCE AND THE DEPARTMENT OF DEFENSE '**HONORS**' **FALSE** '**INVENTOR**' OF THE GEODESIC SPHERE PHASED ARRAY ANETENNA SYSTEM" (capitalization and emphasis in original). Exhibit 5 consists of the following article published on October 11, 2012 in "Air Force Print News Today"[4]

**AF nominates AFMC, AFSPC civilians for DOD award**

By Gloria Kwizera
Air Force Personnel Center Public Affairs

10/11/2012 - **JOINT BASE SAN ANTONIO-RANDOLPH, Texas** --Two Air Force civilians have been nominated for the Department of Defense Distinguished Civilian Service Award.

Dr. Boris Tomasic, Air Force Research Laboratory, Air Force Materiel Command, and Angelica M. Collazo, 92nd Information Operations Squadron, Air Force Space Command, will represent the Air Force during the 57th annual DOD competition, Air Force Personnel Center officials said.

The award is the highest honor given by the Secretary of Defense to career civilian employees, said Staff Sgt. Leland T. Moseley, AFPC Special Trophies and Awards section. It is presented annually to a small number of DOD civilians whose careers reflect exceptional devotion to duty and significant contributions of broad scope to DOD operational efficiency, economy, or other improvements.

Tomasic invented and led the development of a revolutionary new antenna - the Geodesic Dome Phased Array Antenna - for the Air Force satellite control network. It provides tracking, telemetry and control of nearly all DOD and National Aeronautics and Space Administration satellites, transitioning the technology from initial concept to a field ready demonstration levels, He also provided critical support to Air Combat Command on the Joint Threat

---

[4]  AF  Nominates  AFMC,  AFSPC  civilians  for  DOD  award,  <u>available</u>  <u>at</u>, https://www.af.mil/News/Article-Display/Article/110314/af-nominates-afmc-afspc-civilians-for-dod-award (last visited June 19, 2020).

Emitter, Increment Two Program, developing a system that mimics surface-to-air missile system radars currently employed worldwide.

Tomasic's contributions to antenna technology paved the way for Air Force, Navy and Marine fighter pilots to fly against several emulator systems in realistic combat training scenarios. Tomasic also contributed to practical radar and communication system improvements that benefit all DOD forces, including a field deployable phased array for ballistic missile defense, assessment of the Army's Comanche and Black Hawk helicopter antennas, Space Based Radar system development for the Defense Advanced Research Projects Agency and development of extremely high frequency solid state antenna technology that resulted in improved aircraft connectivity with the military strategic, tactical and relay satellite network..

Collazo has been at the forefront of cutting-edge cyber defense initiatives critical to the projection of global military power and national defense. She led the execution of more than $62 million to deploy the first of its kind global information protection capability, initiating more than 200 major software changes to a cyber incident handling database. That system is now the baseline for U.S. Strategic Command's Joint Computer Emergency Response Team Database, used by Joint Chiefs of Staff decision-makers to correlate critical cyber incidents across all services.

Collazo drove establishment of facilities that emulated DOD networks enabling operators to conduct product and network security assessments. As a result, her facility was selected as the first-ever site for critical testing of enterprise-wide solutions to prevent, detect and counter unauthorized users and actions on DOD networks. She directed 63 system and 25 base cyber vulnerability assessments, sharing findings with numerous DOD commanders, system program offices and other joint agencies, enabling them to remediate thousands of critical system vulnerabilities.

Tomasic and Collazo are authorized to wear the Air Force Recognition Lapel Pin, Moseley said.

(capitalization and emphasis in original). In plaintiff's opposition to defendant's motion to dismiss, plaintiff also states that defendant committed "acquisition of Innovation fraud under Title 15 USC section 638(a) and 638 (b)." (capitalization in original).

Defendant moves to dismiss plaintiff's complaint in its entirety, on multiple grounds, arguing that this court lacks subject-matter jurisdiction over plaintiff's claims, and that plaintiff has failed to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) (2019) of the Rules of the United States Court of Federal Claims (RCFC). Defendant states that "it appears there are three potential causes of action in the complaint: (1) unauthorized patent use by the Government; (2) a 'taking' by the Government of the '134 patent; and (3) a fraud claim (or inventorship dispute) against the

Government." (internal references and footnote omitted). Finally, defendant argues that all of plaintiff's claims are barred by the statute of limitations. Regarding the alleged unauthorized patent use, defendant argues that "[a]lthough the complaint does not identify any particular accused device, the exhibits appended to Plaintiff's complaint here and in Bondyopadhyay I make clear that Plaintiff accuses the **exact same** device of infringing the **exact same** patent" in both suits. (capitalization and emphasis in original). Defendant argues that "both the patent and taking claims have previously been adjudicated against Plaintiff, such that these causes of action fail on the grounds of res judicata." Defendant argues that "neither the patent nor the taking claims can be plausibly pled because the '134 patent has been construed in a manner that prohibits a finding of infringement or taking by the Government's activities." Defendant also argues that the court "lacks any semblance of subject-matter jurisdiction over Plaintiff's taking and fraud claims."

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, a pro se plaintiff is entitled to a more liberal construction of the pro se plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 575 U.S. 985 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Pauly v. United States, 142 Fed. Cl. 157 (2019); Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995))); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2); Fed. R. Civ. P. 8(a)(1), (2) (2019); see also Ashcroft v. Iqbal, 556 U.S. at 677-78 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1380 (Fed. Cir. 2019) ("To avoid dismissal under RCFC 12(b)(6), a plaintiff 'must allege facts "plausibly suggesting (not merely consistent with)" a showing of entitlement to relief.'" (quoting Acceptance Ins. Cos., Inc. v. United States, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557))). McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

The United States has waived sovereign immunity over patent infringement claims against the federal government and its contractors, and has provided the United States Court of Federal Claims with jurisdiction to hear such claims, under 28 U.S.C. § 1498(a). Section 1498(a) states, in relevant part:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. . . .

> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and

with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

28 U.S.C. § 1498(a) (2018); see also Golden v. United States, 955 F.3d 981, 986 (Fed. Cir. 2020) ("28 U.S.C. § 1498(a) permits suits against the United States for its unauthorized use of a patented invention."); Zoltek Corp. v. United States, 672 F.3d 1309, 1312 (Fed. Cir. 2012).

Defendant in the above-captioned case asserts that plaintiff's patent claims have previously been decided in this court, in favor of the United States, by Judge Williams' decisions, on the partial motion to dismiss, Bondyopadhyay I, the claims construction, Bondyopadhyay II, and the motion for summary judgment, Bondyopadhyay III. The United States Court of Appeals for the Federal Circuit affirmed the lower court's claim construction and finding that the Air Force's Ball ATD did not infringe on the '134 patent. See generally Bondyopadhyay IV, 748 F. App'x at 308. Defendant argues that the doctrine of res judicata, and more specifically, the doctrine of claim preclusion, bars plaintiff from bringing his claim of patent infringement again in the above-captioned case.

The doctrine of res judicata "includes the two related concepts of claim preclusion and issue preclusion." Nasalok Coating Corp. v. Nylok Corp., 522 F.3d 1320, 1323 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2008); see also Faust v. United States, 101 F.3d 675, 677 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 520 U.S. 1200 (1997) ("[W]e note that the term res judicata has been used narrowly to denote 'claim preclusion' and more generally to denote either 'claim preclusion' or 'issue preclusion.'" (quoting Foster v. Hallco Mfg. Co., 947 F.2d 469, 478 (Fed. Cir. 1991))). The United States Supreme Court has stated:

Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n.5 (1979).

In a recent case, the United States Court of Appeals for the Federal Circuit described the difference between claim and issue preclusion as follows:

"The doctrine of res judicata involves the related concepts of claim preclusion and issue preclusion." Phillips/May Corp. v. United States, 524 F.3d 1264, 1267 (Fed. Cir. 2008). "Issue preclusion operates only as to issues actually litigated, whereas claim preclusion may operate between the parties simply by virtue of the final judgment." Young Engn'rs, Inc. v. U.S. Int'l Trade Comm'n, 721 F.2d 1305, 1314 (Fed. Cir. 1983).

First Mortg. Corp. v. United States, Case No. 19-1798, 2020 WL 3108286, at *4 (Fed. Cir. June 12, 2020) (ellipses in original).

Regarding claim preclusion, the Federal Circuit in First Mortgage further stated:

> Claim preclusion "foreclose[es] any litigation of matters that . . . should have been advanced in an earlier suit." Phillips/May Corp., 524 F.3d at 1267 (internal quotation marks and citation omitted). "A final judgment on the merits of an action precludes the parties or their privies from relitigating issued that were or could have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L. Ed.2d 103 (1981) (citing Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S. Ct. 715, 92 L. Ed. 898 (1948) and Cromwell v. Cty. Of Sac, 94 U.S. 351, 352–53, 24 L. Ed. 195 (1877)).

First Mortg. Corp. v. United States, 2020 WL 3108286, at *4 (alteration and ellipses in original); see also Hallco Mfg. Co., Inc. v. Foster, 256 F.3d 1290, 1294 (Fed. Cir. 2001) ("The general concept of claim preclusion is that when a final judgment is rendered on the merits, another action may not be maintained between the parties on the same 'claim.'" (citing Restatement (Second) of Judgments §§ 18–19)).

"Generally, claim preclusion applies where: '(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first.'" First Mortg. Corp. v. United States, 2020 WL 3108286, at *4 (quoting Ammex, Inc. v. United States, 334 F.3d 1052, 1055 (Fed. Cir. 2003) (citing Parklane Hosiery Co. v. Shore, 439 U.S. at 326 n.5)). A Judge of the United States Court of Federal Claims has stated:

> [C]laim preclusion applies when there is (i) "a judgment on the merits in a prior suit;" (ii) "a second suit involving the same parties or their privies;" and (iii) the second suit is "based on the same cause of action." Parklane Hosiery, 439 U.S. at 326 n.5, 99 S. Ct. 645; see also Gillig[ v. Nike, Inc.], 602 F.3d at 1361 [(Fed. Cir. 2010)]; Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1362 (Fed. Cir. 2000); Strategic Hous. Finance Corp. of Travis Cty. v. United States, 87 Fed. Cl. 183, 192 (2009).

Aviation Software, Inc. v. United States, 101 Fed. Cl. 656, 662–63 (2011). Furthermore, for claim preclusion to apply, "a litigant must have a 'full and fair opportunity' to litigate its case." Id. at 663 (quoting Poyner v. Murray, 508 U.S. 931, 933 (1993)); see also Kremer v. Chemical Const. Corp., 456 U.S. 461, 481 n.22 (1982); Pactiv Corp. v. Dow Chemical Co., 449 F.3d 1227, 1233 (Fed. Cir. 2006).

The related doctrine of issue preclusion, also known as collateral estoppel, precludes a party from re-litigating an issue that was "litigated and resolved in a valid court determination essential to the prior judgment." New Hampshire v. Maine, 532 U.S. 742, 748-49, reh'g denied, 533 U.S. 968 (2001). "Under the judicially-developed doctrine

of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." United States v. Mendoza, 464 U.S. 154, 158 (1984); see also Allen v. McCurry, 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."). "When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970). The United States Supreme Court has explained that issue preclusion guards against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana v. United States, 440 U.S. 147, 153–54 (1979) (footnote omitted). The Supreme Court also stated:

> Issue preclusion bars successive litigation of "an issue of fact or law" that "is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment." Restatement (Second) of Judgments § 27 (1980) (hereinafter Restatement). If a judgment does not depend on a given determination, relitigation of that determination is not precluded. Id., § 27, Comment h.

Bobby v. Bies, 556 U.S. 825, 834 (2009); see also United States v. Mendoza, 464 U.S. at 158 ("Collateral estoppel, like the related doctrine of res judicata, serves to 'relieve parties of the cost and vexation of multiple law-suits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" (quoting Allen v. McCurry, 449 U.S. at 94)).

The United States Court of Appeals for the Federal Circuit has set out four guidelines for determining whether issue preclusion is appropriate:

> Issue preclusion bars a cause of action when four conditions are met: "(1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) the plaintiff had a full and fair opportunity to litigate the issue in the first action."

Laguna Hermosa Corp. v. United States, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (quoting In re Freeman, 30 F.3d 1459, 1465 (Fed. Cir. 1994); see also Biafora v. United States, 773 F.3d 1326, 1333 (Fed. Cir. 2014); Ga. Power Co. v. United States, 143 Fed. Cl. 743, 748 (2019).

Although plaintiff in the above-captioned case does not expressly mention any device by name, including the AFRL's Ball ATD, as having allegedly infringed upon the '134 patent, plaintiff's complaint appears to revolve around the manufacturing of the Ball ATD, the device which was at the center of the dispute before Judge Williams in Bondyopadhyay I through Bondyopadhyay III, and the United States Court of Appeals for

the Federal Circuit in <u>Bondyopadhyay IV</u>. As discussed above, attached to plaintiff's complaint in the current case before the court is the following acquisition timeline:



The above acquisition timeline was also filed by plaintiff in Judge Williams' case, and appears to comport with Judge Williams' description of the Ball ATD. In <u>Bondyopadhyay III</u>, Judge Williams described the Ball ATD as follows:

> There is only one accused device at issue—the Ball Advanced Technology Demonstration antenna. Since at least 2000, the Air Force Research Laboratory was interested in the feasibility of a large antenna system called the Geodesic Dome Phased Array Antenna. As part of this research, the Air Force sponsored a number of small businesses to research and develop technology required for building a full-scale Geodesic Dome Phased Array Antenna. Subsequently, in November 2006, the Air Force awarded a contract to Ball Aerospace & Technologies Corporation to develop a Geodesic Dome Phased Array Antenna advanced technology demonstration. Accordingly, Ball was "to develop, build, and demonstrate the technological maturity, manufacturing readiness, and mission effectiveness of a scalable sector" of a Geodesic Dome Phased Array Antenna. The Ball Advanced Technology Demonstration antenna was the result of this research and development.
>
> The Ball Advanced Technology Demonstration antenna was designed in 2006–07, manufactured in 2007–08, and installed at Schriever Air Force Base in Colorado in 2008–09, for testing and demonstration. The actual

demonstration of the Ball Advanced Technology Demonstration antenna took place between February 2009 and May 2009.

The Ball Advanced Technology Demonstration antenna, which stood roughly one to two stories high, was not completely constructed to constitute a full sphere, and was only made up of six flat panels: a single central pentagonal-shaped panel, surrounded by five outer hexagonal-shaped panels. The figure below depicts the Ball Advanced Technology Demonstration antenna constructed by the Air Force:



As explained by Dr. Haupt, Defendant's expert, this figure shows the six panels that constitute the Ball Advanced Technology Demonstration antenna array. In Dr. Haupt's opinion, and, as is obvious from the figure, these six panels are a very small fraction of the array panels of a full Geodesic Dome Phased Array Antenna. The Ball Advanced Technology Demonstration antenna is not a "sphere" as defined by the Court in its claim construction opinion because it is not greater than a hemisphere, as it only had six panels.

The picture of the Ball Advanced Technology Demonstration antenna appended to the Complaint shows these six panels as follows:



After the demonstration in 2009, the Ball Advanced Technology Demonstration antenna was disassembled, with one part sent back to Ball Aerospace for further testing, and after 2012, the Air Force Research Laboratory did not engage in any activities to develop, manufacture, or test a Geodesic Dome Phased Array Antenna.

Bondyopadhyay III, 136 Fed. Cl. at 118–120 (footnotes and internal references omitted).

As noted above, plaintiff's filings in the current case do not mention the Ball ATD by name, nor does plaintiff attach to his current filings any of the images, reproduced above, from Judge Williams' case, except for the acquisition timeline. Plaintiff's filings in the current case, however, do not reference any other device for the court to consider. Moreover, plaintiff does not refute defendant's statements in its motion to dismiss currently before the court, that "[t]he device made pursuant to this Acquisition Timeline is the Ball Advanced Technology Demonstration antenna," or that "the exhibits appended to Plaintiff's complaint and in Bondyopadhyay I make clear that Plaintiff accuses the **exact**

*same* device of infringing the ***exact same*** patent," (capitalization and emphasis in original). Plaintiff's complaint also makes numerous references to his previous case in this court, although plaintiff appears to incorrectly conclude that the previous decisions by Judge Williams and the United States Court of Appeals for the Federal Circuit cut in plaintiff's favor because Judge Williams and the Federal Circuit recognized that plaintiff owns the '134 patent. That plaintiff appears to be the owner of the '134 patent, however, does not satisfy the inquiry of whether any device used by the United States infringed on plaintiff's '134 patent.

As discussed above, in Bondyopadhyay III, Judge Williams found that the Ball ATD did not infringe upon the '134 patent, see Bondyopadhyay III, 136 Fed. Cl. at 124, and in Bondyopadhyay IV, the United States Court of Appeals for the Federal Circuit upheld her decision. See Bondyopadhyay IV, 748 F. App'x at 308. Moreover, this was the central dispute in the plaintiff's previous case in this court, during part of which Judge Williams conducted a claim construction hearing and issued a claims construction opinion in 2017. See Bondyopadhyay II, 129 Fed. Cl. 793. Plaintiff has had "full and fair opportunity to litigate the issue," and did litigate the issue now presented in the current case, in the previous action before Judge Williams. See Poyner v. Murray, 508 U.S. at 933. Therefore, plaintiff's claim that the Ball ATD infringed on the '134 patent is barred by the doctrine of res judicata.

Defendant next argues that, to the extent plaintiff states a Fifth Amendment taking claim, this court lacks subject-matter jurisdiction to hear the claim, also under the doctrine of res judicata. Defendant alternatively argues that the court lacks jurisdiction over any patent infringement-based taking claims, even if res judicata does not apply. Plaintiff failed to address, in the many filings plaintiff submitted in the current case, defendant's arguments, raised in its motion to dismiss, the issue of whether plaintiff's Fifth Amendment taking claim is properly before the court.

The United States Supreme Court has stated that "[t]he principles of res judicata apply to questions of jurisdiction as well as to other issues." Am. Sur. Co. v. Baldwin, 287 U.S. 156, 166 (1932). Judges of the United States Court of Appeals for the Federal Circuit and the United States Court of Federal Claims also have explained that the principles of res judicata may apply to questions of jurisdiction. See Amgen Inc. v. United States Int'l Trade Comm'n, 902 F.2d 1532, 1536 n.5 (Fed. Cir. 1990) ("Dismissals for lack of jurisdiction may be given res judicata effect as to the jurisdictional issue.");[5] Wagstaff v. United States, 105 Fed. Cl. 99, 110 (2012) ("As for Plaintiff's claims of violations of the Fair Debt Collection Practices Act, both a federal district court and a federal appellate court have ruled that the United States has not waived its sovereign immunity with respect to such claims. Accordingly, this jurisdictional issue has already been resolved, and the

---

[5] The court notes that in an unpublished opinion, the United States Court of Appeals for the Federal Circuit stated that "[i]t is well settled that the principles of res judicata apply to questions of jurisdiction as well as to other issues." Citizens Elecs. Co., Ltd. v. OSRAM GmBH, 225 F. App'x 890, 893 (Fed. Cir. 2007) (citing Am. Sur. Co. v. Baldwin, 287 U.S. at 166).

court is barred from adjudicating these claims under principles of res judicata." (citing Wagstaff v. Dep't of Educ., Case No. 5:05–cv–01245, at 19–22 (W.D.Tex. Feb. 15, 2007; Wagstaff v. Dep't. of Educ., 509 F.3d 661, 663–64 (5th Cir. 2007), cert. denied, 554 U.S. 904, reh'g denied, 554 U.S. 942 (2008)); but see Goad v. United States, 46 Fed. Cl. 395, 398, appeal dismissed, 243 F.3d 553 (Fed. Cir.), cert. denied, 531 U.S. 1015 (2000) ("[I]f the second-filed claim contains new information which cures the jurisdictional defect fatal to the first-filed suit, then the second-filed suit presents a different jurisdictional issue and res judicata does not apply."). Judges of the United States Court of Federal Claims also have indicated that, under the related doctrine of issue preclusion, or collateral estoppel, this court may be precluded from exercising subject-matter jurisdiction in an ongoing action when the same action, based on the same facts, has been previously dismissed on jurisdictional grounds and the jurisdictional flaw that necessitated dismissal on the first suit has not been cured. See Lowe v. United States, 79 Fed. Cl. at 229 ("It is beyond cavil that the issue of collateral estoppel goes to subject matter jurisdiction, and may be pleaded as a 12(b)(1) motion." (citing Schwasinger v. United States, 49 F. App'x 888 (Fed. Cir. 2002) (affirming lower court's dismissal of a plaintiff's third complaint on the basis of collateral estoppel because plaintiff's two prior complaints were identical to the third complaint and had been dismissed for lack of subject matter jurisdiction)).

As discussed above, Judge Williams' first decision in plaintiff's patent infringement case previously filed in this court was the 2015 grant of defendant's partial motion to dismiss in Bondyopadhyay I, which dismissed plaintiff's Fifth Amendment taking claim on the ground that the court lacked subject-matter jurisdiction. See Bondyopadhyay I, 2015 WL 1311726, at *6 ("To the extent Plaintiff's claim of patent infringement is brought as a Fifth Amendment taking, the claim is dismissed."). Judge Williams explained:

> Defendant correctly asserts that a claim for patent infringement against the Government is considered under § 1498 rather than the Fifth Amendment. Demodulation[, Inc. v. United States], 118 Fed. Cl. [69,] at 73 [(2014)] ("Count IV is dismissed to the extent that Plaintiff attempts to fashion its patent infringement claim as a Fifth Amendment takings claim. A patent infringement claim is a tort claim and therefore is excluded by the Tucker Act's prohibition on 'cases sounding in tort.' The only way to bring a patent infringement claim in this Court is to assert the claim under 28 U.S.C. § 1498(a) . . . ."); Keehn v. United States, 110 Fed. Cl. 306, 355 (2013) ("[P]laintiff's Fifth Amendment takings theory is without merit. It is 28 U.S.C. § 1498(a), not the Fifth Amendment to the United States Constitution, that provides the waiver of sovereign immunity that enables a plaintiff to file suit against the government for patent infringement."). To the extent Plaintiff's claim of patent infringement is brought as a Fifth Amendment taking, the claim is dismissed.

Bondyopadhyay I, 2015 WL 1311726, at *6 (final alteration in original). As addressed by Judge Williams, the case law is clear that a patent infringement claim such as plaintiff's is not to be treated as a Fifth Amendment taking claim. See Golden v. United States, 955 F.3d at 986 ("We first consider the dismissal of Golden's patent infringement-based

takings claims. The Claims Court held that it did not have jurisdiction over these claims pursuant to 28 U.S.C. § 1491, because patent infringement claims against the government are to be pursued exclusively under 28 U.S.C. § 1498. We agree." (internal reference omitted)). Therefore, to the extent plaintiff alleges a taking claim based on the alleged infringement of the '134 patent, this court lacks jurisdiction to hear such a claim as a Fifth Amendment taking claim.

Defendant also addresses a remaining claim by plaintiff, that a "possible reading of Plaintiff's complaint is that Plaintiff believes that the Government has committed fraud by identifying someone *other* than Plaintiff as inventor of what Plaintiff believes he invented." (emphasis in original). In Exhibit 5 of plaintiff's complaint, plaintiff attaches an article published by the Air Force Personnel Center Public Affairs, on October 11, 2012, quoted above, regarding the nomination of two Air Force civilians for the "Department of Defense Distinguished Civilian Service Award." The article states that one of the civilians employed by the AFRL, Dr. Boris Tomasic, "invented and led the development of a revolutionary new antenna - the Geodesic Dome Phased Array Antenna - for the Air Force satellite control network." To the extent that plaintiff alleges that the United States committed a fraud, or made fraudulent statements in this exhibit, this court lacks subject-matter to adjudicate the claim, as they are tort claims. The Tucker Act expressly excludes tort claims, including those committed by federal officials, from the jurisdiction of the United States Court of Federal Claims. See 28 U.S.C. § 1491(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008); Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.) ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims."), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Rohland v. United States, 136 Fed. Cl. 55, 65–66 (2018) ("Claims of fraud, conspiracy, harassment, breach of fiduciary duty, negligence, trespass, and false imprisonment sound in tort."); Hampel v. United States, 97 Fed. Cl. 235, 238 (2011); Jumah v. United States, 90 Fed. Cl. 603, 607 (2009) ("[I]t is well-established that the Court of Federal Claims does not have jurisdiction over tort claims. Here, Mr. Jumah seeks damages for '[n]eglect, [m]isrepresentation, [f]alse [i]mprisonment, [c]onspiracy, [i]ntentional [i]nfliction of emotional [d]istress, [i]nvasion of [p]rivacy, [n]egligence and [t]respass and [p]unitive [d]amages.' These are all claims sounding in tort." (internal citation omitted; all brackets in original)), aff'd, 385 F. App'x 987 (Fed. Cir. 2010); Woodson v. United States, 89 Fed. Cl. 640, 650 (2009); Fullard v. United States, 77 Fed. Cl. 226, 230 (2007) ("This court lacks jurisdiction over plaintiff's conspiracy claim because the Tucker Act specifically states that the Court of Federal Claims does not have jurisdiction over claims 'sounding in tort.'"); Edelmann v. United States, 76 Fed. Cl. 376, 379–80 (2007) ("This Court 'does not have jurisdiction over claims that defendant

engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties' . . . [and] Plaintiffs' claims of fraud, misrepresentation, slander, perjury, harassment, intimidation, coercion, theft, and defamation, and their claims that the Government deprived Ms. Edelmann of her right to a fair trial, are tort claims." (quoting Cottrell v. United States, 42 Fed. Cl. 144, 149 (1998)); McCullough v. United States, 76 Fed. Cl. 1, 3 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007); Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885 (Fed. Cir.), reh'g denied (Fed. Cir. 2006). Therefore, plaintiff's allegations of fraudulent or false conduct on the part of the defendant are claims which sound in tort, and, accordingly, must be dismissed for lack of jurisdiction in this court.

Finally, defendant alternatively argues that all of plaintiff's claims are barred by the statute of limitations. Suits brought against the United States in the United States Court of Federal Claims are generally subject to a six-year statute of limitations. According to the statute at 28 U.S.C. § 2501 (2018):

> Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues. . . . A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases.

Id. "The six-year statute of limitations set forth in section 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims." John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006), aff'd, 552 U.S. 130 (2008).

For suits involving patent infringement against the United States, however, the time limitation to file suit against the United States for patent infringement can be tolled up to six years from the time an administrative claim is filed to when the administrative claim is denied, pursuant to 35 U.S.C. § 286 (2018). The statute at 35 U.S.C. § 286 states:

> Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.

> In the case of claims against the United States Government for use of a patented invention, the period before bringing suit, up to six years, between the date of receipt of a written claim for compensation by the department or agency of the Government having authority to settle such claim, and the date of mailing by the Government of a notice to the claimant that his claim has been denied shall not be counted as part of the period referred to in the preceding paragraph.

Id. Although the statute at 35 U.S.C. § 286 does not reference this court's six-year statute of limitations in 28 U.S.C. § 2501, judges of this court have found that "[t]he six-year

limitations period established by 28 U.S.C. § 2501 is modified by 35 U.S.C. § 286." Unitrac, LLC v. United States, 113 Fed. Cl. 156, 164 (2013), aff'd, 589 F. App'x 990 (Fed. Cir. 2015) (citing Dow Chemical Co. v. United States, 32 Fed. Cl. 11, 20, aff'd in part, rev'd in part on other grounds, 226 F.3d 1334 (Fed. Cir. 2004)); see also Filler v. United States, Case No. 19-173, 2020 WL 2312244, at *6 (Fed. Cl. May 8, 2020) ("In limited circumstances, the statute of limitations for claims of infringement against the United States government may be tolled where the patentee files an administrative claim." (citing 35 U.S.C. § 286)); Ideal Innovations, Inc. v. United States, 139 Fed. Cl. 737, 743 (2018) ("Section 286 allows for the tolling of the § 2501 limitations period for patent infringement claims while a validly filed administrative claim is being brought.").

A patent infringement claim against the United States accrues when the accused device is "'first available for use, and it is when the use occurs that a license is considered to have been taken.'" Unitrac, LLC v. United States, 113 Fed. Cl. at 160 (quoting Decca Ltd. v. United States, 544 F.2d 1070, 1082, 210 Ct. Cl. 546, 567 (1980))); see also Filler v. United States, 2020 WL 2312244, at *5; Floyd v. United States, 125 Fed. Cl. 183, 189 (2016). Furthermore, "[a]lleged ongoing infringement does not extend or restart the limitations period. Rather, once the device is available for use, the license is taken, the patent owner's cause of action accrues, and the patent owner has six years to bring its case." Ross-Himes Designs, Inc. v. United States, 139 Fed. Cl. 444, 459 (2018) (citing Starobin v. United States, 662 F.2d 747, 749, 229 Ct. Cl. 67, 70 (1982)); see also Filler v. United States, 2020 WL 2312244, at *5.[6] In Starobin, the United States Court of Claims, the predecessor court to this court, stated:

> [e]ach device, i.e., each individual member of the universe of infringing devices . . . can be taken only once in its lifetime, and if that taking occurs prior to the six-year period which immediately precedes the filing of the lawsuit in the Court of Claims, then recovery as to that particular device is barred forever by 28 U.S.C. § 2501.

Starobin v. United States, 662 F.2d at 749–50 (footnote omitted).

As discussed above, plaintiff's patent infringement claim in the above-captioned case fails under the doctrine of res judicata. But regardless, the statutes at 28 U.S.C. § 2501 and 35 U.S.C. § 286 provide that plaintiff's patent infringement claim was filed outside of the applicable statute of limitations in which to file. Plaintiff in the above-captioned case filed an administrative claim with the Judge Advocate General of the

---

[6] The court notes that, in an unpublished decision in 2017, the United States Court of Appeals for the Federal Circuit stated that "the jurisdictional clock for a § 1498 action begins to run when the government first uses the claimed invention without authorization and that specific use is not considered continuous in nature for jurisdictional purposes." Sacchetti v. United States, 711 F. App'x 979 (Fed. Cir. 2017) (citing Starobin v. United States, 662 F.2d at 750; and also citing Regent Jack Mfg. Co. v. United States, 337 F.2d 649, 651, 167 Ct. Cl. 815, 817 (1964); Hyde v. United States, 336 F. App'x 996, 998 (Fed. Cir. 2009); Bissell v. United States, 41 F. App'x 414, 416 (Fed. Cir. 2002)).

United States Air Force on June 17, 2002, which was denied 44 days later, on July 30, 2002. In order for plaintiff's infringement claim to be timely in this court under 28 U.S.C. § 2501 and 38 U.S.C. § 286, plaintiff's claim must have been filed within six years and 44 days from when plaintiff's claim accrued, which, as discussed above, occurs "'when the accused [instrumentality] is first available for use.'" Floyd v. United States, 125 Fed. Cl. at 189 (alteration in original) (quoting Unitrac, LLC v. United States, 113 Fed. Cl. at 160)). Neither party in the above-captioned case states when, if ever, the Ball ATD was first available for use. Judge Williams stated in Bondyopadhyay III, however, that "the actual demonstration of the Ball Advanced Technology Demonstration antenna took place between February 2009 and May 2009." Bondyopadhyay III, 136 Fed. Cl. at 119. Even taking the later, May 2009 date of demonstration of the Ball ATD as the time the Ball ATD was first available for use, plaintiff would have had to file the current case within six years and 44 days of May 2009, i.e., July 2015.

Judge Williams also stated in Bondyopadhyay III that "after 2012, the Air Force Research Laboratory did not engage in any activities to develop, manufacture, or test a Geodesic Dome Phased Array Antenna." Bondyopadhyay III, 136 Fed. Cl. at 120. Even if this court took the first day "after 2012," i.e., January 1, 2013, as the date in which plaintiff's claims accrued, which is later than any violation plaintiff alleges to have occurred in this case, plaintiff would have had to file this case on or before February 14, 2019 in order to be timely. Therefore, under any plausible formulation of the claims in plaintiff's complaint, the current case, which was filed on November 27, 2019, was not filed within the applicable statute of limitations pursuant to 28 U.S.C. § 2501 and 35 U.S.C. § 286.

## CONCLUSION

Plaintiff's allegations in the above-captioned case are often confused and miss the mark, even allowing plaintiff every benefit of interpretation, given plaintiff's pro se status. Plaintiff failed to effectively or directly respond to a number of the dispositive legal issues raised in defendant's motion to dismiss, although plaintiff filed frequent, unresponsive documents. Plaintiff instead opted, over and over again, to reiterate his assertion that he is the owner of the '134 patent, without addressing whether infringement actually occurred. Moreover, plaintiff did not offer any evidence or argument as to why plaintiff's current case for patent infringement against the United States is not materially identical to the patent infringement claims at issue in plaintiff's previous case in this court, or why his current case is within the applicable statute of limitations. For all these reasons, as discussed above, defendant's motion to dismiss is **GRANTED**, and plaintiff's complaint is **DISMISSED**, with prejudice. The Clerk shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED.**

<u>s/Marian Blank Horn</u>
**MARIAN BLANK HORN**
**Judge**